IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 97-10655

Summary Calendar
_____


JANET TIMMERMAN,

             Plaintiff-Appellant,

     v.

IAS CLAIM SERVICES INCORPORATED,

             Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Texas
(3:96-CV-16-R)
_____
February 20, 1998
Before KING, HIGGINBOTHAM, and DAVIS, Circuit Judges.

PER CURIAM:[*]

     Plaintiff-appellant Janet Timmerman appeals the district

court's grant of summary judgment in favor of defendant-appellee

IAS Claim Services, Inc. on her claims of age discrimination,

reverse race discrimination, and retaliation.  We affirm the

_____

     [*]     Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

judgment of the district court.

## I.    FACTUAL & PROCEDURAL BACKGROUND

In September 1993, defendant-appellee IAS Claim Services, Inc. (IAS) hired plaintiff-appellant Janet Timmerman as a temporary employee in its accounting department.  In May 1994, Timmerman resigned and accepted a position at another company, but within approximately two weeks she returned to her previous temporary position at IAS.

In August 1994, IAS reorganized its accounting department in a manner that included the elimination of some temporary accounting positions and the creation of permanent ones.  On August 30, 1994, IAS notified Timmerman in writing that her services would not be required after September 15, 1994.  IAS indicated that Timmerman was terminated because she was overqualified for the available permanent position and her temporary position was being eliminated.

On September 2, 1994, however, Timmerman received another letter informing her that she was being terminated as of that day.  The letter indicated that the reason for her early termination was that she had conducted herself in an unprofessional manner and disrupted the department by complaining to her supervisor, Leigh Walk, and to other employees that she was being treated unfairly.

At the time of her termination, Timmerman, who is white, was

fifty-five years old and had worked in IAS's accounting department for almost one year.  IAS hired a black man who was younger than Timmerman to fill the permanent position.

Approximately five months after her termination, Timmerman filed an administrative complaint with the Texas Commission on Human Rights, claiming that she was "discriminated against on the basis of [her] race, color, sex, and age and in retaliation for protected activity in violation of Title VII."

On December 1, 1995, Timmerman filed suit against IAS in state court claiming that IAS violated her rights by engaging in age discrimination, reverse racial discrimination, and retaliation in violation of state and federal law.  IAS removed the case to federal court and later filed a motion for summary judgment on all of Timmerman's claims.  On May 19, 1997, the district court granted IAS's motion and dismissed the case with prejudice.  Timmerman timely filed this appeal.

## II.  SUMMARY JUDGMENT STANDARD

We review a grant of summary judgment de novo, applying the same criteria that the district court used in the first instance. Kemp v. G.D. Searle & Co., 103 F.3d 405, 407 (5th Cir. 1997).  We consult the applicable law in order to ascertain the material factual issues, and we then review the evidence bearing on those issues, viewing the facts and inferences to be drawn therefrom in the light most favorable to the nonmovant.  King v. Chide, 974

F.2d 653, 656 (5th Cir. 1992).

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). We note, however, that "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient" to preclude summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1985).

### III. DISCUSSION

#### A. Retaliation

The district court concluded that Timmerman failed to establish even a prima facie case of retaliation. This court has held that

> [t]o establish a prima facie case of retaliatory discharge under § 2000e-3(a) of Title 42, a plaintiff must demonstrate (1) that he engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link between participation in the protected activity and the adverse employment decision exists.

Anderson v. Douglas & Lomason Co., 26 F.3d 1277, 1300 (5th Cir. 1994) (footnote omitted). The district court found that Timmerman did not engage in any protected activities and

4

therefore failed to meet the first prong of this test.  Timmerman contends that her complaints that she was being treated "unfairly" equate to complaints of discrimination and that she therefore did engage in activity protected by Title VII.  We disagree.

Despite Timmerman's protestations to the contrary, illegal discrimination is indeed something different from simple unfair treatment.  As we have previously stated, "it has long been the law in this circuit that Title VII . . . do[es] not protect against unfair business decisions[,] only against decisions motivated by unlawful animus."  Nieto v. L&H Packing Co., 108 F.3d 621, 624 (5th Cir. 1997) (internal quotation marks omitted) (alteration in original).  As Timmerman has offered no evidence that she complained of discrimination prohibited by Title VII, she has failed to establish a prima facie case of retaliatory discharge, and the district court was correct to grant summary judgment on this claim.[1]

## B.  *Reverse Racial Discrimination & Age Discrimination*

The district court determined that although Timmerman alleged facts sufficient to establish a prima facie case of both reverse racial discrimination and age discrimination, she failed

---

[1]   As we conclude that Timmerman failed to establish a prima facie case of retaliatory discharge, we do not address her complaint that the district court considered incompetent summary judgment evidence pertaining to IAS's stated business reason for her termination.

5

to create a fact issue as to whether IAS's proffered business reason for not hiring her as a permanent employee was a pretext for race or age discrimination.[2]  Timmerman argues on appeal that the district court (1) incorrectly required her to present "conclusive proof" of discrimination in order to survive summary judgment, (2) improperly construed IAS's assertion that Timmerman was overqualified for the job as a nondiscriminatory reason for not offering her a permanent position, (3) considered incompetent evidence supporting IAS's proffered reason for not offering her a permanent position, and (4) erred in refusing to consider her evidence rebutting IAS's proffered reason for not hiring her. These arguments lack merit.

The district court determined that Timmerman established a prima facie case of reverse racial discrimination by showing that she was a member of a protected class,[3] she was qualified for the

---

[2]     As the same issues pervade each of these claims, we discuss them together.  Guthrie v. Tifco Indus., 941 F.2d 374, 376 (5th Cir. 1991) ("The elements of a Title VII case . . . apply to suits arising under the ADEA."); see also Burns v. Texas City Ref., Inc., 890 F.2d 747, 750 (5th Cir. 1989) ("In ADEA cases in which there is no direct evidence of age discrimination, the same evidentiary procedure formulated for Title VII cases applies.").

[3]     There is some confusion in this circuit as to when a white plaintiff may satisfy the first prong of this test. Compare Flanagan v. Aaron E. Henry Community Health Servs. Ctr., 876 F.2d 1231, 1233 (5th Cir. 1989) (requiring that a white plaintiff show that she was a minority within the Health Center in order to establish a prima facie case of reverse racial discrimination), with Singh v. Shoney's, Inc., 64 F.3d 217, 219 (5th Cir. 1995) (stating only that a plaintiff must show that she

job, she was discharged, and the position was filled by someone not within her protected class.  See Young v. City of Houston, Texas, 906 F.2d 177, 180 (5th Cir. 1990).  Both sides agreed for purposes of the summary judgment motion that Timmerman established a prima facie case of age discrimination.

Although the plaintiff always retains the "ultimate burden of persuasion" to demonstrate that a challenged employment action was the result of intentional discrimination, once Timmerman established a prima facie case of each type of discrimination, the burden of going forward shifted to the defendant to provide evidence of a legitimate, nondiscriminatory reason for its decision.  St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511, 506-08 (1993); see also Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981).  IAS claims that it legitimately refused to offer Timmerman permanent employment because its restructuring of the accounting department eliminated her temporary position and because she was overqualified for the newly created permanent position dealing exclusively with the

---

was a member of a "protected group" in order to make out a prima facie case of reverse racial discrimination and implying that a white plaintiff claiming race discrimination satisfies this standard).  See generally, 1 BARBARA LINDEMANN ET AL., EMPLOYMENT DISCRIMINATION LAW 1041 (3d ed. 1996) (noting that "most courts have suggested that majority-group plaintiffs must offer some evidence, beyond the remaining elements of the McDonnell Douglas test, in order to establish a prima facie case" of reverse racial discrimination).  For purposes of this discussion, however, we assume that Timmerman has established a prima facie case of reverse racial discrimination.

collection of past-due accounts and had expressed dissatisfaction when doing such work in the past.[4]

Once IAS proffered its reason for the discharge, the burden

_____

[4] Timmerman complains that the district court improperly relied on incompetent and controverted summary judgment evidence supporting IAS's business reason for not offering her a permanent position. Specifically, Timmerman argues that the district court considered an unverified letter written to Timmerman by Walk and the affidavit of Keith Weitzman, Timmerman's immediate supervisor. In addition, Timmerman argues that the district court erred in relying on statistical studies offered by IAS. These claims lack merit. Assuming that Timmerman preserved these objections, which is not entirely clear from the record, we are not persuaded that the district court improperly considered any inadmissible summary judgment evidence.

The letter from Walk was properly authenticated in Weitzman's affidavit. Moreover, Timmerman herself identified it in her deposition as the letter she received from Leigh Walk.

As to Weitzman's affidavit, we have held that "'on a motion for summary judgment a court will disregard only the inadmissible portions of a challenged affidavit offered in support of or opposition to the motion and will consider the admissible portions in determining whether to grant or deny the motions.'" Williamson v. United Stated Dep't of Agriculture, 815 F.2d 368, 383 (5th Cir. 1987) (quoting Lee v. National Life Assurance Co., 632 F.2d 524, 529 (5th Cir. 1980)). In the absence of any evidence supporting Timmerman's assertion that the district court improperly relied on any inadmissible portions of the affidavit, we presume that it did not. See id.

Finally, Timmerman claims that the trial court erroneously relied on statistics, derived from a list containing the names, positions, sex, race, and age of all of IAS's employees, that indicated that "upon Plaintiff's termination, 58% of IAS employees were age 40 or older, and 41% were at least age 50." While Timmerman may be correct that better evidence would include a comparison of the percentages of temporary and permanent employees in each group, that argument alone does not make the list irrelevant, especially as Timmerman failed to offer such statistics herself even though they were easily ascertainable from the list submitted by IAS. Thus, we conclude that it was not improper for the district court to consider the summary judgment evidence about which Timmerman complains.

of going forward shifted back to Timmerman, who, in order to survive IAS's motion for summary judgment, was required to demonstrate that a material question of fact existed as to whether IAS's proffered reason for not hiring her was merely a pretext for discrimination. See St. Mary's Honor Ctr., 509 U.S. at 509 ("By producing evidence (whether ultimately persuasive or not) of nondiscriminatory reasons, [defendants] sustained their burden of production."). The district court found that Timmerman failed to offer any evidence to support her argument that IAS's purported explanation was pretextual, and it therefore granted summary judgment for IAS. We agree.

In both her opposition to IAS's motion for summary judgment and her briefs on appeal, Timmerman consistently argues that IAS has failed to prove that its stated reason for discharging her was not a pretext for discrimination. However, once the defendant has satisfied its burden of producing evidence of a nondiscriminatory reason for the discharge, the presumption of discrimination created by the plaintiff's prima facie case is rebutted. Texas Dep't of Community Affairs, 450 U.S. at 255. Thus, unless Timmerman produced some evidence that a genuine issue of material fact existed as to whether the purported reason for not hiring her was a pretext for age or race discrimination, IAS was under no obligation to provide any further evidence supporting its proffered justification. See, e.g., Waggoner v. City of Garland, Texas, 987 F.2d 1160, 1166 (5th Cir. 1993)

9

("[Waggoner's supervisors] may have disliked Waggoner; they may have even sought to concoct a reason for his discharge. Yet, unless Waggoner can connect that dislike to his age, there is no genuine issue of material fact regarding age or age based discrimination.").

Timmerman contends that the facts that she was qualified for the position and that she was offered a permanent position four months prior to her termination are sufficient to meet this burden.[5] In support of her arguments, Timmerman cites several cases in which this circuit has reversed a district court's grant of summary judgment on the ground that the plaintiff raised a genuine issue of material fact on the issue of pretext. These cases are inapposite. In each instance, as Timmerman herself notes in her brief, the plaintiff offered evidence that tended to disprove the defendant's proffered nondiscriminatory reason for the discharge. See, e.g., Atkinson v. Denton Publ'g Co., 84 F.3d 144, 152 (5th Cir. 1996) (reversing a grant of summary judgment where the plaintiff raised a fact issue as to whether

---

[5] Timmerman calls our attention to several cases from other jurisdictions in which courts have cautioned that overqualification is sometimes a pretext for age discrimination. See, e.g., Taggart v. Time Inc., 924 F.2d 43, 47-48 (2d Cir. 1991). But see Equal Employment Opportunity Comm'n v. Insurance Co. of N. A., 49 F.3d 1418, 1421 (9th Cir. 1996) (disagreeing with Taggart court that overqualification is always tantamount to age discrimination). However, she cites no cases from this circuit indicating that overqualification is always an illegitimate reason for refusing to hire someone, and she offers no evidence tending to indicate that it was a pretext for age discrimination in this case.

10

the employer's explanation that the plaintiff had performance problems was pretextual by presenting evidence that he had been told he was doing a good job and had never received negative performance evaluations); Hall v. Gillman, Inc., 81 F.3d 35, 37 (5th Cir. 1996) (reversing a grant of summary judgment in an age discrimination case where the plaintiff's evidence that he had recently won a major sales award created a fact issue as to whether the employer's stated reason for the discharge--poor sales performance--was pretextual).

In contrast to the cases discussed above, neither Timmerman's argument that she is qualified for the position nor her reliance on the fact that she was previously offered a permanent position contradicts the employer's explanation that she was overqualified for the more limited duties that the new position would entail. Moreover, the fact that IAS offered her a permanent position four months earlier tends to disprove her theory that IAS's actions were motivated by illegal discrimination on the basis of her race or her age. Cf. Brown v. CSC Logic, Inc., 82 F.3d 651, 658 (5th Cir. 1996) ("'From the standpoint of the putative discriminator, "[i]t hardly makes sense to hire workers from a group one dislikes (thereby incurring the psychological costs of associating with them), only to fire them once they are on the job."'" (quoting Proud v. Stone, 945 F.2d 796, 797 (4th Cir. 1991) (quoting John J. Donohue III & Peter Siegelman, The Changing Nature of Employment

Discrimination Litigation, 43 STAN. L. REV. 983, 1017 (1991)))).
Finally, Timmmerman has offered no other evidence to rebut IAS's
assertion, and "[a]bsent countervailing evidence, the trier of
fact must accept the defendant's explanation as the real reason
for the discharge." Guthrie v. Tifco Indus., 941 F.2d 374, 378
(5th Cir. 1991). Thus, we conclude that Timmerman has failed to
raise a genuine issue of material fact sufficient to survive a
motion for summary judgment on her claims of reverse race
discrimination and age discrimination.

## IV.  CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the
district court.